UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

ALEXANDER KRAN, III,

                          Debtor,

-------------------------------------------------------------------X

BERGER & ASSOCIATES ATTORNEYS, P.C., and
IAN BERGER,

                          Appellants,

    -v-

ALEXANDER KRAN, III,

                          Appellee.

Case No. 11-CV-3171 (KMK)

OPINION AND ORDER

Appearances:

Ronald Cohen, Esq.
121 S. 2nd St.
Wilmington, NY
*Counsel for Appellants*

Bruce Laurence Weiner, Esq.
Rosenberg, Musso & Weiner LLP
26 Court Street, Suite 2511
New York, NY
*Counsel for Appellee*

KENNETH M. KARAS, District Judge:

      Appellants Berger & Associates Attorneys, P.C., and Ian Berger appeal a decision of the bankruptcy court in an adversary proceeding denying their motion for summary judgment and granting the motion for summary judgment of Appellee Alexander Kran, III, who is also the debtor. For the reasons below, the judgment of the bankruptcy court is affirmed in all respects.

I.  Background

The facts here are taken mostly from the Parties' Bankruptcy Local Rule 7056-1 statements filed in the bankruptcy court.  The core facts relevant to this appeal are undisputed.

A. Facts

In 1992, Appellants, an individual lawyer and his law firm, entered into an agreement with David Davidson ("Davidson"), according to which Davidson agreed to perform legal services on certain personal injury cases acquired by Appellants through advertising and other means.  (Appellee's 7056-1 in Supp. of Mot. for Summ. J. ¶ 1 ("Appellee's 7056-1"); Appellants' Resp. to Debtor-Def.'s Rule 7056-1 Statement ("Appellants' 7056-1") ¶ 1.)[1]  The Parties call cases referred in this manner the "Referred Cases."  Under the agreement, Davidson agreed to pay Appellants 40 percent of the fees that he received for the Referred Cases. (Appellee's 7056-1 ¶ 2; Appellants' 7056-1 ¶ 2.)  In 1993, Appellee and Davidson formed a partnership for the practice of law under the name Davidson & Kran, and the firm Davidson & Kran continued the referral agreement with Appellants.  (Appellee's 7056-1 ¶¶ 3–4; Appellants' 7056-1 ¶¶ 3–4.)  In 1996, Davidson & Kran began discussions with Appellants to reduce the referral percentage to 25%, but no agreement was reached, and in 1996 Appellants stopped referring cases to Davidson & Kran.  (Appellee's 7056-1 ¶¶ 7–8; Appellants' 7056-1 ¶¶ 7–8.)

In 2004, Appellants sued Davidson & Kran in New York state court, contending that Davidson & Kran owed Appellants outstanding referral fees.  (Appellee's 7056-1 ¶ 10; Appellants' 7056-1 ¶ 10.)  As part of the litigation, Appellants requested certain documents that

---

[1] These are documents 14 and 15 respectively on the docket for the adversary proceeding in bankruptcy court, *Berger & Assocs. Attorneys P.C. v. Kran*, No. 08-8428 (Bankr. S.D.N.Y. filed Dec. 1, 2008).  For the remainder of this Opinion, the docket below will be referred to as the "Adversary Proceeding Docket."

Davidson & Kran were required to file with the New York Office of Court Administration ("OCA"); these documents would have provided a definitive record of Davidson & Kran's legal activities during those years. (Appellee's 7056-1 ¶ 11; Appellants' 7056-1 ¶ 11.) But Davidson & Kran had failed to file some or all of the required documents — the scope of Davidson & Kran's malfeasance is disputed, though the resolution of that factual dispute is not relevant on appeal. (Appellee's 7056-1 ¶ 11; Appellants' 7056-1 ¶ 11.) Then, in state court, Davidson & Kran engaged in a pattern of deceptive conduct during discovery. In an opinion dated November 17, 2005 striking Davidson & Kran's answer, the state court judge found:

> [D]efendants have failed to adequately explain how they are conducting a law practice if, as they allege, they have virtually no files, no computer information, and do not know which of these cases have been settled and what fees were paid. . . . In light of defendants [sic] ever-changing explanations and their inconsistent position as to whether the documents exist . . . this Court concludes that they have engaged in a willful pattern of uncooperative course of conduct designed to obstruct discovery.

*Berger & Assocs. Attorneys, PC v. Davidson*, No. 100800/2004, 2005 WL 6750994 (N.Y. Sup. Ct. Nov. 17, 2005).

Ultimately, Davidson & Kran did provide many documents in discovery — though Appellee acknowledges on appeal that Davidson & Kran never produced the OCA statements (Appellee Br. 5) — and the state court held a trial on damages. (Appellee's 7056-1 ¶ 18; Appellants' 7056-1 ¶ 18.) At the trial, Appellants' expert testified that Davidson & Kran owed them more than $2.2 million. (Appellee's 7056-1 ¶ 19; Appellants' 7056-1 ¶ 19.) In May 2007, the Parties settled for $1.4 million. (Appellee's 7056-1 ¶ 20; Appellants' 7056-1 ¶ 20.) Additionally, the matter was referred to the Disciplinary Committee of the New York state Bar, and Appellee was admonished, but not suspended or disbarred. (Appellee Br. 6.)

Soon after the settlement, Davidson died, and the partnership of Davidson & Kran was

dissolved.  (Appellee's 7056-1 ¶ 20; Appellants' 7056-1 ¶ 20.)

      B. Prior Proceedings

      On August 22, 2008, Appellee filed a voluntary Chapter 7 petition.  (Appellee's 7056-1 ¶ 22; Appellants' 7056-1 ¶ 22.)  On November 18, 2008, the Trustee filed a Report of No Distribution, a document declaring that Appellee had no assets to distribute, and his debts were discharged.  (Adversary Proceeding Docket, unnumbered dkt. entry of Nov. 18, 2008).  Neither Appellants nor anyone on their behalf appeared at the meeting of creditors.  (Appellee's 7056-1 ¶ 25; Appellants' 7056-1 ¶ 25.)

      On December 1, 2008, Appellants initiated an adversary proceeding by filing a complaint against Appellee in the bankruptcy court.  (Adversary Proceeding Dkt. No. 1.)  The complaint was amended, and in the amended complaint, Appellants contended that Appellee should be prohibited from discharging the $1.4 outstanding debt in light of 11 U.S.C. § 727(a)(3), which provides that "[a] court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case," 11 U.S.C. § 727(a)(3).  (*See* Am. Compl. ¶ 35 (Adversary Proceeding Dkt. No. 8).)  Appellants alleged in particular that because of Appellee's failure to file the closing statements with the OCA and his destruction of certain other files relating to the Referred Cases, Appellee "should be denied discharge and should be liable to all debts and obligations . . . owed to the Plaintiffs."  (Am. Compl. ¶¶ 36–42.)[2]

---

    [2] Appellants also initially brought four additional causes of action under 11 U.S.C. § 523(a), (*see* Compl. ¶ 8), but those claims were voluntarily dismissed, (*see* Am. Compl. ¶ 8),

The Parties engaged in discovery and proceeded to file cross-motions for summary judgment. It is undisputed that Appellee turned over all requested documents available to him. (Aff. in Supp. of Def.'s Mot. for Summ. J. ¶ 7 (Adversary Proceeding Dkt. No. 12); *see also* Tr. of Hr'g of March 22, 2011 ("Tr.") 27–28 (Adversary Proceeding Dkt. No. 30) (counsel for Appellants agreeing that "there was nothing in discovery that created any question in [counsel's] mind about this issue.").) After a hearing, the bankruptcy court, per Judge Robert D. Drain, issued an oral ruling denying Appellants' motion and granted Appellee's. (Tr. 54.) Judge Drain held that, while Appellee's deception and lack of recordkeeping made it "difficult to determine the amount of [Appellants'] underlying claim for referral fees against [Appellee]," the settlement constituted the "complete resolution of the referral fee issue." (Tr. 44–45.) Thus, "no further information is necessary to determine [Appellants'] claim *in this case*." (Tr. 45 (emphasis added).) And because, as a legal matter, the "focus" of § 727(a)(3) is "on ascertaining the Chapter 7 debtor's *present financial condition*," the prior obstruction by Appellee with regard to the referred cases was not covered by § 727(a)(3) and hence that Section did not bar the discharge of the settlement debt. (Tr. 46.) In a written order, Judge Drain formally granted Appellee's motion, denied Appellant's, and dismissed the complaint. (Adversary Proceeding Dkt. No. 23.)

Appellants timely appealed to this Court, which has jurisdiction pursuant to 28 U.S.C. § 158 to hear appeals from final orders of bankruptcy courts. (Dkt. No. 1.)

## II. Discussion

Appellants formally present four questions on appeal: (1) "[w]hether the Bankruptcy

---

and are not at issue on appeal.

Court was clearly erroneous in determining that 11 U.S.C. §727(a)(3) did not bar a discharge"; (2) "[w]hether the Bankruptcy Court was clearly erroneous in granting a discharge in light of 11 U.S.C. §727(a)(2)"; (3) "[w]hether the Bankruptcy Court erred in denying Appellants summary judgment"; (4) "[w]hether the Bankruptcy Court erred in granting [Appellee] summary judgment." (Appellants' Br. 2.) The third and fourth questions both turn on the resolution of question one: namely, does Appellee's admitted *prior* malfeasance, which occurred before and during the state court litigation that resulted in the settlement, bar the discharge of the debt under § 727(a)(3)? Because Judge Drain properly interpreted that provision and then carefully applied it to the undisputed facts here, the Court affirms that the statute does not bar discharge. Moreover, Appellants' second question presented, which invokes § 727(a)(2), was not presented below, and the Court holds that it is waived on appeal.

      A. Standard of Review

Under Rule 8013 of the Federal Rules of Bankruptcy Procedure, when a district court reviews an order of a bankruptcy court on appeal, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013; *see also Morgan Olson L.L.C. v. Frederio* (*In re Grumman Olson Indus., Inc.*), 467 B.R. 694, 699 (S.D.N.Y. 2012) (same). "A bankruptcy court's conclusions of law, by contrast, are reviewed de novo." *ACC Bondholder Group v. Adelphia Commcn's Corp.* (*In re Adelphia Commc'ns Corp.*), 367 B.R. 84, 90–91 (S.D.N.Y. 2007).

Here, the Court has under review a bankruptcy court's ruling on cross-motions for summary judgment. Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, the familiar rule governing summary judgment in federal district courts — that is, Federal Rule of Civil Procedure 56 — "applies in adversary proceedings." Fed. R. Bankr. P. 7056. In turn,

under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *In re Grumman Olson*, 467 B.R. at 699 (applying the standard of review principles of Rule 56 to a decision reviewing cross-motions for summary judgment in an adversary proceeding).

    B. Section 727(a)(3)

With certain exceptions, debtors may discharge their debts in Chapter 7 bankruptcy proceedings. One of those exceptions is contained in 11 U.S.C. § 727(a)(3), which, as noted, provides that "[a] court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

"'The purpose and intent of [§ 727(a)(3)] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs.'" *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006) (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936) (alteration in original). Accordingly, to make a threshold showing under § 727(a)(3) that discharge should be barred, the party objecting to discharge must show: "(1) that the debtor failed to keep or preserve adequate records; and (2) 'that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.'" *Jacobwitz v. Cadle Co.* (*In re Jacobowitz*), 309 B.R. 429, 436 (S.D.N.Y. 2004) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992)). Further, because § 727 imposes

an "'extreme penalty for wrongdoing,'" it "'must be construed strictly against those who object to the debtor's discharge and "liberally in favor of the bankrupt.'" *In re Cacioli*, 463 F.3d at 234 (quoting *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996)).

Here, the bankruptcy court found that Appellants have "made a showing of [Appellee's] failure to keep or preserve records." (Tr. 43). That factual finding is correct beyond dispute, as Appellee acknowledges its recordkeeping failures leading up to the 2004 state court litigation and subsequent settlement. (Appellee Br. 5.) The key question, then, is whether Appellee's previous failures to maintain proper records with regard to the Referred Cases, plus his evasive conduct in the related state-court litigation, makes it "impossible to ascertain the debtor's financial condition and material business transactions" for purposes of this bankruptcy proceeding. And the answer to that is no.

### 1. The Scope of § 727(a)(3) Is Limited

Just like so much else in life, this case is mostly about timing. Appellants contend that "[a] years-long pattern of failure to create and maintain business records preceded the Chapter 7 case and effectively obscured [Appellee's] financial position," and that, therefore, Appellee is not entitled to discharge pursuant to § 727(a)(3). (Appellants' Br. 11.) But whether Appellee's *prior* recordkeeping failures regarding the Referred Cases affected the state-court litigation is not the key inquiry under § 727. Rather, as Judge Drain stated, "the focus is on ascertaining the Chapter 7 debtor's *present* financial condition." (Tr. 46.)

Judge Drain's interpretation of § 727 is supported by the caselaw. The recent case that makes this most clear is *In re Jacobwitz*. In that case, which is quoted at length in Appellants' opening brief, a creditor obtained a $1.9 million judgment against a debtor as a result of an unpaid loan. 309 B.R. at 432. For the next eight years, the debtor apparently operated his own

business and sold insurance, and, during this period, kept inadequate records. *See id.* at 433. In 2002, the debtor filed a Chapter 7 petition and sought to discharge the $1.9 million debt. *Id.* But, following his filing, the debtor repeatedly failed to provide any documentation of his income for the six months preceding his bankruptcy filing. *Id.* at 433. Instead, the debtor simply stated that he had certain business expenses, though he disclosed no record of these expenses; the debtor also provided the creditor with three prior years of tax returns but also failed to turn over any record of the business expenses claimed on those returns. *Id.*

The creditor brought a complaint contending that discharge was barred by § 727(a)(3). *Id.* at 434. The bankruptcy court granted summary judgment to the creditor, and the district court affirmed. *Id.* In affirming, the district court noted that § 727(a)(3) "does not require that a debtor maintain a bank account or an impeccable system of bookkeeping," but "merely requires that a debtor provide reasonable records so that his creditors may ascertain the debtor's *present financial condition* and the nature of any business transactions that occurred within a reasonable period prior to filing." *Id.* at 436 (emphasis added) (internal quotation marks omitted). Thus, the district court noted that information regarding business income and expenses for the first half of 2002, which was missing, "was particularly relevant because from the information that the debtor provided on his bankruptcy petition, it was apparent that 2002 was proving to be a much more profitable year than 2001." *Id.* at 437. Given the proper scope of § 727(a)(3), a denial of discharge was appropriate because in that case the debtor's inadequate recordkeeping made it impossible to tell his financial condition *as of the date of the filing of the petition*. *Id.* at 438; *see also In re Cacioli*, 463 F.3d at 234 ("The purpose and intent of [§ 727(a)(3)] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." (alteration in original) (internal quotation marks omitted)); *Meridian Bank*,

9

958 F.2d at 1230 ("The purpose of section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." (citing 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1979)); *Thaler v. Erdheim* (*In re Erdheim*), 197 B.R. 23, 29 (Bankr. E.D.N.Y. 1996) (same).

Appellants take a broader view of § 727, but their view would seem to extend the timeframe of § 727(a)(3) backwards as far as the eye can see. "Absence of business records mandates denial of discharge," Appellants argue categorically. (Appellants's Br. 26.) On Appellants' interpretation, because Appellee "is not the 'honest debtor' who made 'inadvertent or honest mistake[s]' but someone who concealed information 'bearing a relationship to the debtor's business, transactions or estate which might lead to the discovery of assets, business dealings, or the existence or disposition of the debtor's property,'" § 727(a)(3) bars discharge of his debt. (Appellants' Br. 24 (quoting *Baron v. Klutchko* (*In re Klutchko*), 338 B.R. 554, 568 (Bankr. S.D.N.Y. 2005)).)

But an interpretation this broad and open-ended would turn § 727(a)(3) into an indefinite penalty for any kind of past malfeasance, and the courts have not interpreted § 727(a)(3) to be so punitive. To be sure, the Second Circuit has stated that the "denial of discharge serves both to deter inadequate record-keeping and to protect creditors whenever a failure to preserve records may have been motivated by fraud," *In re Cacioli*, 463 F.3d at 234 (quoting *In re Martin*, 554 F.2d 55, 57–58 (2d Cir. 1977)). But deterrence under § 727(a)(3) goes only so far. Indeed, cutting against the deterrence rationale, the Second Circuit in *In re Cacioli* stated that § 727 "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt," precisely because to do otherwise would be overly punitive and against

the overarching goals of the bankruptcy laws. *Id.* (internal quotation marks omitted).

In sum, § 727(a)(3) strikes a balance, where the focus is on the kind of recordkeeping that would allow a bankruptcy court to conduct a fair and expedient distribution of a debtor's assets. As such, the bar on discharge contained in § 727(a)(3) extends to only certain types of recordkeeping deficits, and only back to "a reasonable period past to present." *In re Jacobowitz*, 309 B.R. at 436 (internal quotation marks omitted).

### 2. Section 727(a)(3) Does Not Bar Discharge

With the proper reach of § 727 in mind, the Court now turns to whether Appellants' summary judgment motion should have been denied and whether Appellees' summary judgment motion granted on these facts. That is, notwithstanding Appellee's obvious past recordkeeping-related failures with respect to the Referred Cases, the question is whether Appellee's "subsequent provision of financial disclosure, both in connection with his bankruptcy case as well as in discovery in connection with this adversary proceeding, establishes on a summary judgment basis that his financial condition and business transactions are ascertainable in light of the relevant case law setting forth the . . . applicable inquiry date for the 727(a)(3) cause of action." (Tr. 51.)

Judge Drain properly held that Appellee had made such a showing, and accordingly his dual rulings on the cross-motions were correct. They key here is the insight that Appellee's past failure to keep adequate records bears on the amount Appellee owed Appellants as a result of the agreement regarding the Referred Cases — but the recordkeeping does *not* go to the court's ability to ascertain Appellee's *current* ability to repay his debts. Thus, the prior malfeasance is not covered by § 727(a)(3).

Appellants' inability to articulate any evidence for its theory that the past recordkeeping

malfeasance affected the court's ability to ascertain the Appellee's financial position as of the filing date of the petition was clear at oral argument in the bankruptcy court. Consider the following exchange. The Court: "So the [settlement] claim is fixed at a million-four. So, again, what would having the records achieve?" Counsel for Appellants: "Well, we don't know whether [Appellee's] got other sources of income. You know, the records were so incomplete and so — it was such a morass of documents we don't know whether he has other funds, we just don't know what his financial situation is. Maybe he can — maybe he can pay part of this debt, we just don't know. And maybe he owed my client more money. In fact, he probably did, but we just don't know." (Tr. 9–10.)

As the bankruptcy court properly found, both of these lines of response are inadequate. The first response — "it was such a morass of documents we don't know whether he has other funds" — does not respond to why those missing *prior* records relating to the Referred Cases pertain to whether Appellee *currently* has funds to pay his debt. The bankruptcy court repeatedly followed up on this point, and received in response the same conclusory statements or pure supposition from Appellants. For instance, Judge Drain asked: "Is there any allegation, though, that you can't discern existing accounts receivable or existing income of the debtor as of the petition date?" Counsel: "Well, it's quite possible there are still some outstanding cases that were referred from my client." The Court: "No, no, I need more than quite possible." (Tr. 10.) Appellants' admission is fatal to their case, particularly when paired with the fact that Appellee provided all tax returns and other financial documents in discovery that showed his financial condition at or near the filing of the petition. (Tr. 21–22 (Counsel for Appellee stating that "everything that [Appellants] requested in this adversary proceeding . . . was produced for them.")

This exchange mirrors what is contained in the Amended Complaint and in the factual statements submitted along with the summary judgment motions.  There is no allegation in the Amended Complaint about how the lack of records related to the Referred Cases bears on Appellee's ability to pay the debt, because the amount of the debt was previously fixed by the state-court settlement.  Rather, the Amended Complaint rehashes Appellee's admitted malfeasance leading up to the state-court proceeding.  (*See* Am. Compl. ¶¶ 36–42.)  Moreover, there is no evidence in the record that creates an issue of material fact that any of the missing OCA records bear on Appellee's inability to pay his debt *as of the filing date of the petition*. (*See* Tr. 12 (The Court: "Can you point me to anything in the 7056 statements that cover any issues about ascertaining financial condition of a business transaction other than the million-four?"  Counsel: "Other than the million-four and the business transactions of the partnership, no.")).  Nor, again, is there any allegation that Appellee has failed to disclose anything requested of him in discovery during the bankruptcy proceeding itself.

Counsel's second response to the bankruptcy court's key question is legally irrelevant.  For when Appellants' counsel said "maybe [Appellee] owed my client more money" as a result of the referral arrangement, that is just Appellants' attempt to relitigate the prior proceeding that resulted in the $1.4 million settlement.  But, as explained, § 727(a)(3) does not implicate a bankruptcy court's ability to ascertain the amount of old debts, nor whether previous settlements were procured honestly.  The provision bars discharge where the recordkeeping malfeasance implicates the assessment of the debtor's current financial position.

Judge Drain, ruling from the bench, provided the bottom line of this case, and this Court adopts it completely:

> [T]he only specific instance of unascertainability that the [Appellants] have

>identified is one that is not relevant: i.e., the unascertaininability of the amount of [Appellants'] claim.  Of course that's not relevant because the claim has already been fixed at a million-four.  I am not asking [Appellants] to submit evidence to prove a negative.  Given the lapse of time between the failures of recordkeeping described in the State Court litigation and the chapter 7 petition date, as well as the undisputed substantial disclosures made by the [Appellee] in . . . this bankruptcy case, I believe it was incumbent on the [Appellants] to submit some evidence that the [Appellee] has not, as is relevant to his bankruptcy case and estate, preserved information from which his financial condition or business transactions must be ascertained.  It is not enough to simply allege, as the [Appellants] have here, that because of the [Appellee]'s failure to maintain records as to cases that were long closed before the bankruptcy petition date (the result of which led to a settlement between the parties), [Appellants] just do not know what might be the condition of the [Appellee]'s estate and business.  Some evidence of what the plaintiff can't ascertain with respect to the [Appellee]'s financial condition and business needs to be in the record, and it is not there.

(Tr. 53–54.)

C. Section 727(a)(2)

In their questions presented on appeal, Appellants ask this Court to address "[w]hether the Bankruptcy Court was clearly erroneous in granting a discharge in light of 11 U.S.C. §727(a)(2)."  (Appellants' Br. 2.)  That provision provides that a debt may not be discharged if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed — (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2).

Appellants have waived this argument.  Their Amended Complaint invokes only a single cause of action under § 727(a)(3), (*see* Am. Compl.¶ 35), and, absent exceptions not applicable here, reviewing courts do not address arguments not pressed below.  *See Best Payphones, Inc. v. Manhattan Telecomms. Corp.* (*In re Best Payphones, Inc.*), 432 B.R. 46, 60 (S.D.N.Y. 2010)

("Because this issue was not raised below, it has been waived and will not be considered by this Court."); *see also Klein v. Civole Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88 (2d Cir. 1994) (noting that the "general rule" is that reviewing courts do not address arguments not raised below).

In any event, even were this Court to pass on the issue, § 727(a)(2) contains an explicit time limitation: the debtor's obstruction must have occurred within one year of the filing of the petition or during the pendency of the bankruptcy proceeding. *See* 11 U.S.C. § 727(a)(2). As explained above, all of the alleged malfeasance occurred outside of that timeframe, and Appellants have admitted to providing no evidence in the adversary proceeding that proves otherwise. (Tr. 28 (Counsel for Appellants admitting that they did "not state . . . that [they] were unable to ascertain [Appellee's financial position] as of . . . the date he filed his petition.").)

### III. Conclusion

For the reasons stated herein, the judgment of the bankruptcy court is affirmed. The Clerk of the Court is respectfully directed to close the case.

SO ORDERED.

Dated: White Plains, New York
April 30, 2013

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15